**TOOR v. WESTOVER.**

**TOOR et al. v. WESTOVER.**
No. 12999.

United States Court of Appeals
Ninth Circuit.

Dec. 18, 1952.

Rehearing Denied Jan. 28, 1953.

Fink, Rolston, Levinthal & Kent, Leo V.
Silverstein and Schwartz, Gale & Bloom,
Los Angeles, Cal., for appellants.

Charles S. Lyon, Asst. Atty. Gen., Tax Division, Ellis N. Slack, S. Dee Hanson and Carolyn Just, Special Assts. to the Atty. Gen., Walter S. Binns, U. S. Atty. and Edward R. McHale, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before STEPHENS and ORR, Circuit Judges, and McCORMICK, District Judge.

ORR, Circuit Judge.

This is a family partnership case. These cases represent a phase in the history of income tax litigation which reflects the increasing efforts on the part of taxpayers to distribute the impact of taxation among members of a close family group without substantially altering control over the income producing property and the attempts of Congress and the Commissioner of Internal Revenue to insure that income from property will be taxable to the substantial owner of that property and income from personal services will be taxable to the person rendering those services.

The present appeal is taken from a determination by the District Court that a partnership in which Mr. Toor, hereinafter referred to as appellant, was general partner and the Beverly Hills National Bank and Trust Company, as trustee of two trusts, the limited partner, was not valid for income tax purposes during the years 1943, 1944 and 1945. It was held that the entire income of the business was properly assessed by the Commissioner of Internal Revenue to appellant and his wife on a community basis.[1]

■ The District Court, in rendering its decision, was fully aware of the decision of the Supreme Court of the United States in the case of Commissioner of Int. Rev. v. Culbertson, 1949, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659, clarifying the principles developed in Commissioner of Int. Rev. v. Tower, 1946, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, and Lusthaus v. Commissioner, 1946, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679, wherein it was established as a primary test of reality of a family partnership for income tax purposes whether "the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." 337 U.S. at page 742, 69 S.Ct. at page 1214. The Supreme Court further indicated the circumstances to be considered in determining tax validity: " * * * the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent * * *." 337 U.S. at page 742, 69 S.Ct. at page 1214. The determination of these questions is one of fact. See Harkness v. Commissioner, 9 Cir., 1952, 193 F.2d 655, 658, certiorari denied, 343 U.S. 945, 72 S.Ct. 1040. The District Court, upon examination of all these circumstances, as required by the rule laid down in the Culbertson case, expressly found that the parties in this case did not in good faith intend to join together in the present conduct of the business enterprise. In doing so the District Court had before it the following facts.

On November 20, 1942, appellant and his wife created separate trusts for their two minor children by paying $21,000 to the Beverly Hills National Bank and Trust Company, as trustee, under the terms of a trust instrument providing that all funds were to be accumulated and no distribution made until the trusts terminated, which was after the children came of age. At the same time appellant and the bank, as trustee, executed articles of limited partnership for the sharing of the profits of a furniture manufacturing business which had previously been operated by appellant as a sole proprietorship. In accordance with this limited partnership agreement, the bank conveyed to the partnership the sum of $20,000 as a capital investment for the two trusts. The trust instrument expressly lim-

1. Separate suits were brought on account of substantially similar assessments made to and paid by appellant and his wife. Counsel stipulated that the decision on appeal in the first case should be applied to and be decisive on the appeal from the second case.

ited the bank to investment of trust funds in businesses in which the appellant was a partner or principal stockholder, or in securities of the United States or of the instrumentalities or states thereof. The District Court found that the trust and limited partnership agreements were presented to the bank by the appellant as one package.

The articles of limited partnership provided that the appellant was to be a general partner and the bank, as trustee, a limited partner; that the partnership was not to terminate until 1955 unless the general partner decided to terminate prior thereto by giving a thirty day notice of intention to dissolve; that the general partner could elect to purchase the interest of the limited partner by payment of "book value"; that the interest of the limited partner was not to be transferable; that the general partner was to have "full charge and control of all of the partnership business and * * * full power and authority to do and perform each and every act necessary or convenient with respect to the partnership business, without limitation, except insofar as the acts of a general partner may be limited by the laws pertaining to limited partnerships."

The articles of limited partnership also provided that the business profits were to be divided on the books in the ratio of one-sixth to each trust and four-sixths to the appellant, but the appellant reserved the right to distribute the profits at such times and in such amounts as he determined.

It is not denied by the Commissioner that books were set up and properly kept on a partnership basis. These books adequately disclosed the relationship between the partners. The parties adhered in all respects to the terms of the limited partnership agreement and to the provisions of the California Limited Partnership Act, Cal.Corporations Code, § 15501 et seq.

The District Court gave much weight to factors inherent in the usual limited partnership agreement. The court stated [94

F.Supp. 863] : " * * * I am of the view that the creation of the limited partnership here under consideration did not in any way change the control which the plaintiff exercised over the business, that the trustee contributed neither independent money nor services * * *—in brief, the determination of all matters requiring judgment in the management, control of the property and the disposition and allocation of the funds derived from the business, including the amounts to be allocated as profits each year, was so exclusively under the domination of the plaintiff that, to all intents and purposes, the creation of the partnership made no change whatsoever in the manner in which the business had been conducted before."

We are unable to agree that the creation of the limited partnership made no change whatever in the control exercised by appellant over the business. We believe there is a basic difference between control exercised with unlimited discretion solely for one's personal benefit and control exercised only in a fiduciary capacity as the general partner in a limited partnership. See Cal.Corp.Code, § 15509; 20 Cal. Jur., Partnerships, § 44. This principle has now been recognized by the Treasury Department. Mim. 6767, 1952–1 Cum.Bull. 111. Further, the fact that the bank did not seek to take part in the conduct of the business, even by way of advice, is of doubtful significance, since it is fundamental to a limited partnership that the limited partner have no part in the control or management of the business. See Stern, 1950, 15 T.C. 521, 527; 68 C.J.S., Partnership, § 471. Any conduct on the part of the limited partner which could be construed as taking part in the control of the business would create the danger of the limited partner's being held liable to creditors as a general partner. Cal.Corp.Code, § 15507.[2]

Although Congress has specifically provided that determinations as to the

2. Holzman v. De Escamilla, 1948, 86 Cal. App.2d 858, 195 P.2d 833, illustrates that Cal.Corp.Code, § 15507 is a real danger. It was held that judgment that · limited partners "took part in the control of the business" and thus became liable as general partners was sufficiently supported by evidence.

validity of a family partnership for tax purposes for any taxable year beginning before January 1, 1951, shall be made as if Section 340(b) of the Revenue Act of 1951, 26 U.S.C.A. § 191, had not been enacted, see Section 340(c), 26 U.S.C.A. § 191 note, it is proper to refer to the legislative history of that new statute in seeking to arrive at the prior status of the law. See Alexander v. Commissioner, 5 Cir., 1952, 194 F.2d 921. The reports of the congressional committees emphasized that partnership income should be taxed to the real owner of the partnership interest.[3] It was further noted that "Substantial powers may be retained by the transferor as a managing partner or in any other fiduciary capacity which, when considered in the lights of all the circumstances, will not indicate any lack of true ownership in the transferee. In weighing the effect of a retention of any power upon the bona fides of a purported gift or sale, a power exercisable for the benefit of others must be distinguished from a power vested in the transferor for his own benefit." Sen.Rep. No. 781, 82nd Cong., 1st Sess. § VI A. 7 (1951); H.R.Rep. No. 586, 82nd Cong., 1st Sess. § V M (1951). We believe that this has always been the law.

■ The question in issue here turns on whether in reality the bank as trustee for the minor children became the substantial owner of an interest in the capital of the alleged partnership. It must be recognized that a limited partnership may be valid for tax purposes even where a family relationship is involved. Lamb v. Smith, 3 Cir., 1950, 183 F.2d 938; Greenberger v. Commissioner, 7 Cir., 1949, 177 F.2d 990; Mim. 6767, 1952–1 Cum.Bull. 111. This recognition is given unless additional circumstances are present. We find such circumstances in the instant case further diminishing the incidents of ownership acquired by the limited partner.

■ Finding of Fact 15 in part states: "The partnership was not to terminate until 1955, and the interest of the limited partner was also stated to be not transferable. But the plaintiff had the right to terminate the arrangement upon giving a thirty day notice of intention to dissolve it and he had the absolute right to purchase the interest of the limited partner at 'book' value." It thus appears that upon organization of the partnership the bank surrendered dominion over the money invested until 1955. It has been held that a family partnership will not fail merely because the donee is not free to dispose of his partnership interest. As said in Middlebrook, Jr., 1949, 13 T.C. 385, where such a situation existed: "Partnership is a relationship arising out of contract. The partners may enter into an agreement between themselves with respect to their rights and interests which they deem proper." 13 T.C. at page 394. In the instant case, however, *the donee was neither free to remain out of the partnership nor free to terminate or transfer his interest once the partnership was created.* The District Court's Finding of Fact 12 states: "The trust and limited partnership agreements were presented to the Bank by plaintiff as one package." We understand this to mean that the creation of the trusts was conditional upon organization of the partnership. Although the bank may have carefully investigated appellant and his business prior to assenting to becoming trustee, at no time subsequent to the crea-

---

3. "Section 339 of your committee's bill is intended to harmonize the rules governing interests in the so-called family partnership with those generally applicable to other forms of property or business. Two principles governing attribution of income have long been accepted as basic: (1) income from property is attributable to the owner of the property; (2) income from personal services is attributable to the person rendering the services. There is no reason for applying different principles to partnership income. If an individual makes a bona fide gift of real estate, or of a share of corporate stock, the rent or dividend income is taxable to the donee. Your committee's amendment makes it clear that, however the owner of a partnership interest may have acquired such interest, the income is taxable to the owner, if he is the real owner. If the ownership is real, it does not matter what motivated the transfer to him or whether the business benefited from the entrance of the new partner." Sen.Rep.No.781, 82nd Cong., 1st Sess., § VI A 7 (1951); H.R.Rep. No.586, 82nd Cong., 1st Sess., § V M (1951).

tion of the trusts could the bank as trustee exercise independent judgment to determine whether it would or would not join in organizing the partnership. Because the bank was required to enter the partnership as a condition to creation of the trusts, and because of the further limitation that once the partnership was organized the bank was neither free to transfer its interest nor terminate the partnership, it cannot be said that the bank, as trustee, ever acquired such control as that which constitutes the usual attribute of property ownership. Considering these circumstances in connection with the fact that the appellant, as general manager, retained the powers of management and full discretion as to time and amounts of distribution of profits, we conclude that the appellant remained the substantial owner of the interest he purported to have given away.[4] Cf. Helvering v. Clifford, 1940, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788.

 We are unable to say that the particular findings of the District Court which we have thought to be crucial in this case are clearly erroneous because, upon an examination of the entire evidence, we are not left with a "definite and firm conviction that a mistake has been committed." United States v. United States Gypsum, 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746; see Grace Bros., Inc., v. Commissioner, 9 Cir., 1949, 173 F.2d 170, 173-174.

We note that the Tax Court in a split decision recently reached a contrary conclusion in a similar factual situation. Edward D. Sultan, 1952, 18 T.C. No. 86, par. 18.86 P-H TC 1952; see also Thomas H. Broadhead, 1952, 18 T.C. No. 87, par. 18.87 P-H TC 1952. We are not persuaded by the reasoning of that decision. There the Tax Court found the facts; here we are reviewing contrary findings based upon similar evidence which, as we have said, are not clearly erroneous.

We conclude that the retention by the donor of so many incidents customarily identified with ownership precluded the donee from becoming the substantial owner of a partnership interest which would entitle the partnership to recognition for tax purposes.

Judgment affirmed.

4. The committee reports on the Revenue Act of 1951 clearly indicate the continued importance of an examination of substantial ownership: "The amendment leaves the Commissioner and the courts free to inquire in any case whether the donee or purchaser actually owns the interest in the partnership which the transferor purports to have given or sold him. Cases will arise where the gift or sale is a mere sham. Other cases will arise where the transferor retains so many of the incidents of ownership that he will continue to be recognized as a substantial owner of the interest which he purports to have given away, as was held by the Supreme Court in an analogous trust situation involved in the case of Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. The same standards apply in determining the bona fides of alleged family partnerships as in determining the bona fides of other transactions between family members. Transactions between persons in a close family group, whether or not involving partnership interests, afford much opportunity for deception and should be subject to close scrutiny. All the facts and circumstances at the time of the purported gift and during the periods preceding and following it may be taken into consideration in determining the bona fides or lack of bona fides of a purported gift or sale." Sen.Rep.No.781, 82nd Cong., 1st Sess., § VI A 7 (1951); H.R.Rep.No.586, 82nd Cong., 1st Sess., § V M (1951).