274 N.J. Super. 525 (1994)
644 A.2d 687
CONKLIN FARM, PLAINTIFF-APPELLANT,
v.
DORIS LEIBOWITZ, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 2, 1994.
Decided July 12, 1994.
*526 Before Judges R.S. COHEN and D'ANNUNZIO.
Howard C. Trueger argued the cause for appellant (Howard C. Trueger, attorney; Mr. Trueger of counsel, and Marisa A. Taormina on the brief).
Michael V. Gilberti argued the cause for respondent (Budd Larner Gross Rosenbaum Greenberg & Sade, attorneys; Michael M. Rosenbaum and Michael V. Gilberti on the brief).
The opinion of the court was delivered by R.S. COHEN, J.A.D.
*527 A person admitted as a partner into an existing general partnership is liable for all partnership obligations arising before his admission, but, in the absence of contrary agreement,[1] this liability may be satisfied only out of partnership property. N.J.S.A. 42:1-17. Partnership obligations arising after the new partner is admitted may be satisfied out of the personal assets of any partner, including the new one. See N.J.S.A. 42:1-18; 42:1-40 d.[2]
The question presented by this case is whether a new partner is liable to pay, out of personal assets, interest on a preexisting partnership promissory note accrued for periods of time after admission into the partnership. We hold that such personal liability exists, and we therefore reverse the summary judgment granted to defendant.
Both plaintiff and defendant moved for summary judgment. The facts necessary for decision were simple and not in dispute. In 1986, a general partnership called Longview Estates was formed to purchase a piece of property from Conklin Farm and to develop it for residential condominiums. In connection with the purchase, Longview Estates executed a $9 million promissory note to Conklin Farm, secured by a mortgage bearing interest at agreed rates.
One of the partners in Longview Estates was Joel Leibowitz. On March 15, 1990, he transferred his thirty percent partnership *528 share to his wife Doris, defendant in this case.[3] She owned the share until August 30, 1991, when she transferred it back to her husband. During the seventeen and one-half months of her participation, interest greater than $1 million accrued on the $9 million note and was not paid. Defendant was sued late in 1991 for thirty percent of the interest, or more than $300,000.[4] Longview Estates and the other partners have already been through bankruptcy, and the debt has been discharged as to them.
The question whether current interest on preexisting debt is part of the preexisting debt or is new debt for the purposes of N.J.S.A. 42:1-17 has not been answered in a reported case in New Jersey or, to our knowledge, in any other jurisdiction.[5] The reason may be either that the answer is clear, or that the problem is normally resolved by agreement in advance. For example, a financing party might reserve the authority to approve transfers of partnership shares or to require express assumptions of preexisting partnership debt as a price for release of a withdrawing partner.
The $9 million promissory note was a preexisting debt. As to that the parties agree. The whole outstanding principal of a partnership debt incurred before admission of a new partner is a partnership obligation arising before admission, no matter that some or all of the principal payments may not be due until after admission of the new partner. Plaza Realty Investors v. Bailey, 484 F. Supp. 335, 351 (S.D.N.Y. 1979); Ellingson v. Walsh, O'Connor *529 & Barneson, 15 Cal.2d 673, 104 P.2d 507, 508 (1940). These cases do not deal separately with the question of interest, because the creditors' arguments were that the entire debt was a new obligation because principal payments were due after admission of the new partner.
Here, the Law Division judge reasoned that interest was not a separate and distinct obligation, but rather arose from the note itself, see Consolidated Police & Firemen's Pension Fund Comm'n v. City of Passaic, 23 N.J. 645, 653-54, 130 A.2d 377 (1957), and is therefore part of the preexisting obligation of the note. In our view, that conclusion does not comport with the purposes of Section 17 and the Uniform Partnership Act in general.
We have reviewed the Official Comments of the Commissioners on State Laws to both Section 17 and Section 41 of the Uniform Partnership Act. They are too long to set out in this opinion. They were written some time before 1914, the year in which the Commissioners adopted the Uniform Partnership Act and recommended it to the states for enactment. It is clear from the Official Comments that the purpose of the sections was to deal with the "doubt and confusion" in the common law of the time caused by the established concept that the addition of a partner dissolved the partnership and created a new one. General creditors rarely knew of the dissolution of the debtor partnership, and the creation of a new business firm. Unencumbered partnership assets were transferred from the old to the new partnership, and it continued the business. It was hard to conceive how the creditors of the old partnership automatically became creditors of the new partnership, or, if they did, what their standing was relative to the new partnership, the new partner, and new creditors. Did new creditors have first claim on the assets of the business? Was the incoming partner in any way liable for the debts of the old firm?
*530 The purpose of Section 17 and Sections 41(1) and 41(7),[6] which were adopted substantially verbatim in New Jersey, see N.J.S.A. 42:1-17, -41(1), -41(7), was to settle these questions and to deal fairly with the creditors of the old firm by giving them rights to transferred partnership property and the separate property of the old partners equivalent to the rights of new creditors. On the other hand, only the creditors of the new partnership would have rights against the new partner's separate property.
The primary thrust of Sections 17 and 41, then, was to fairly protect the rights of preexisting creditors in the assets of a newly created partnership. Only incidentally do the sections shield the new partner against the claims of preexisting creditors.
Creditors who had contributed to the wealth and operating viability of the old firm were put in one category. Only creditors who supplied new wealth and viability to the new firm were given the added security of resort to the new partner's personal assets. Thus viewed, the Act is best interpreted to treat as preexisting debt all unconditional obligations springing from contracts of the old partnership for which the old partnership has already received consideration, whether or not the payments on that obligation continue after the admission of the new partner. On the other hand, obligations for which consideration newly arises or continues to arise after the new firm opens are to be treated as new debt.
*531 The only analogous reported cases we know of are those involving rent for current occupancy under preexisting partnership leases. Barbro Realty Co. v. Newburger, 53 A.D.2d 34, 385 N.Y.S.2d 68 (1976); Ellingson v. Walsh, O'Connor & Barneson, 15 Cal.2d 673, 104 P.2d 507 (1940). Those cases held essentially that current rent is compensation for current occupancy, and should thus be treated as new debt. From these cases, plaintiff draws the persuasive argument that interest is current rent for money and also should be treated as new debt.
We adopt this sound approach. A new partnership that pays rent for business premises under an old lease, or pays a supplier for new goods under an old contract to buy them secures a place to operate and inventory to sell, and thus incurs new debt. Just so, a new partnership that incurs interest for current periods on an old loan does so because it chooses to employ the capital borrowed for its enterprise instead of exercising its legal right to pay back the loan and thus cut off the interest obligation.[7]
The summary judgment for defendant is reversed, and the matter is remanded for appropriate proceedings not inconsistent herewith.
NOTES
[1] See Magrini v. Jackson, 17 Ill. App.2d 346, 150 N.E.2d 387 (1958).
[2] Partners are jointly and severally liable for a partner's wrongful act or breach of trust, but only jointly liable for contract debt of the partnership. N.J.S.A. 42:1-15. That means that tort creditors may proceed against all the partners or any of them, but that contract creditors must proceed against the partnership and all solvent partners who are subject to process, and exhaust partnership assets first. Seventy-Three Land, Inc. v. Maxlar Partners, 270 N.J. Super. 332, 335-37, 637 A.2d 202 (App.Div. 1994); La Mar-Gate, Inc. v. Spitz, 252 N.J. Super. 303, 307-08, 599 A.2d 928 (App.Div. 1991).
[3] This fact was conceded by defendant solely for the purpose of analysis of the legal issues presented by the motion for summary judgment. She does not generally admit being a partner, but takes the position that her participation was for the purposes of sharing profits only. The Law Division did not rule on that contention, and it is not before us.
[4] It is unclear from this record why plaintiff sought only thirty percent of the interest from defendant.
[5] The cited section is identical to Section 17 of the Uniform Partnership Act, which has been adopted in many states.
[6] Sec. 17 "A person admitted as a partner into an existing partnership is liable for all the obligations of the partnership arising before his admission as though he had been a partner when such obligations were incurred, except that this liability shall be satisfied only out of partnership property."

Sec. 41(1) "When any new partner is admitted into an existing partnership ... if the business is continued without liquidation of the partnership affairs, creditors of the first or dissolved partnership are also creditors of the partnership so continuing the business."
Sec. 41(7) "The liability of a third person becoming a partner in the partnership continuing the business, under this section, to the creditors of the dissolved partnership shall be satisfied out of partnership property only."
[7] The promissory note permitted prepayment in part or full without penalty. Periodic interest continued, but only as to amounts not paid. We need not determine whether an obligation for interest which, by agreement, remains fully due whether or not the principal is repaid, is new debt or old.